AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA K.T. Newton) 21-079

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| United States of America | ) |
|---|---|
| v. | ) |
| KAREN HOLLINS | ) Case No. 21-mj-1460 |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 2018 to September 2019 in the county of Philadelphia in the Eastern District of PA & elsewhere, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 371 | Conspiracy to bribe a public official |

This criminal complaint is based on these facts:

Between on or about July 2018 and on or about September 2019, in the Eastern District of Pennsylvania and elsewhere, defendant KAREN HOLLINS knowingly conspired with others to corruptly bribe a public official, in violation of 18 U.S.C. § 201(b)(2)(A), by paying money in return for that official being influenced in the performance of official acts, i.e., steering purchase orders and contracts to companies with which HOLLINS was associated , all in violation of 18 U.S.C. § 371.  See attached Affidavit.

☑ Continued on the attached sheet.

/s David Spilker
*Complainant's signature*

David Spilker Special Agent, VA OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 24, 2021 (remotely)   /s/ Elizabeth T. Hey
*Judge's signature*

City and state: Philadelphia, PA   Honorable Elizabeth T. Hey
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT

I, David Spilker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the United States Department of Veteran Affairs, Office of Inspector General ("VA OIG") in West Palm Beach, Florida, and have been so employed since March 2001. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant and make arrests for violations of federal law.

2. This affidavit is submitted in support of a complaint and arrest warrant for KAREN HOLLINS for the violation of Title 18, United States Code, Sections 371 (conspiracy to a bribe public official, in violation of Title 18, United States Code, Section 201(b)(1)(A)).

3. For the reasons stated below, there is probable cause to believe that KAREN HOLLINS knowingly conspired to provide monetary bribes to Cooperating Witness 1 ("CW1"),[1] who has been charged elsewhere and was the Chief of Environmental Management Services ("EMS") at the United States Department of Veterans Affairs Medical Center Philadelphia,

---

[1] CW1 has entered a guilty plea to two counts of bribery in connection with official acts and one count of bribery in connection with fraud in the Eastern District of Pennsylvania and hopes to receive a benefit from the government for cooperation with VA OIG investigations.

1

("VAMC Philadelphia"), located at University and Woodland Avenues, Philadelphia, PA, in return for the award of purchase orders and service contracts with VAMC Philadelphia EMS department to Company A and Company B, with contract award amounts often well in excess of the value of the services to be performed under those contracts, in violation of 18 U.S.C. § 371.  During the time of this offense, HOLLINS, the former Assistant Chief of Logistics at the United States Department of Veterans Affairs Medical Center Miami ("VAMC Miami") located in Miami, Florida, was employed by Cooperating Witness 2 ("CW2") and Cooperating Witness 3 ("CW2"), both of whom were charged elsewhere and owned and operated Company A and Company B. [2]

## AGENT BACKGROUND

4. Prior to being a VA OIG Special Agent, I served in the United States Army as a paratrooper for a combined six plus years of active duty and national guard service.

5. I am currently assigned as the Special Agent in Charge for the VA OIG Southeast Field Office in West Palm Beach, Florida, where I am responsible for managing supervisors, support staff, and special agents who conduct criminal investigations into crimes committed against the programs and operations of the United States Department of Veterans Affairs ("the VA").

---

[2] On March 13, 2020, CW2 and CW3 each entered a guilty plea to one count of conspiracy to commit health care fraud in the Southern District of Florida.  CW2 and CW3 have been sentenced on that charge and received a benefit from the government, a downward departure from their Sentencing Guideline range, as a result of their cooperation with the VA OIG investigation.

6. Over the last 20 years, I have participated in hundreds of criminal investigations and have participated in all aspects of those investigations, to include conducting physical and electronic surveillance, analyzing financial and medical records, reviewing records produced via subpoena, comprehensive reviews of government regulations and policies, cultivating and developing confidential sources, interviewing witnesses and subjects, and analyzing subscriber and telephone toll/cell tower location information.  Further, I have conducted, participated in, and obtained numerous search and arrest warrants, and court orders throughout my career.

7. As a result of my training and experience, I am familiar with the tactics, methods, and techniques of criminals to communicate with each other in-person and including the use of cellular telephones, text messaging, emails, and mail, in connection with their criminal activity.

## INVESTIGATION BACKGROUND

8. I base this affidavit on my personal investigation and the investigation of other VA OIG Special Agents.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter.

9. I am the original case agent assigned to the criminal investigation of KAREN HOLLINS. The information contained within this affidavit is based on my training and experience, as well as my review of documents, source information, recorded conversations, and information and experience imparted to me by other law enforcement officers.  Because this affidavit is being submitted for the limited purpose of establishing probable cause and

securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

## Background of Investigation

10. In July 2015, the VA OIG began investigating allegations that multiple VA employees, at various VAMCs throughout the nation, were being paid kickbacks by vendors to place fraudulent or inflated purchase orders and service contracts with those vendors, were participants in these kickback schemes.

11. In meetings in May and June 2019 and August 2020, CW2 and CW3 told VA OIG Special Agents that, beginning on or about July 2018, acting on behalf of their companies (Company A and Company B), they travelled to Philadelphia, PA, on a regular basis and paid kickbacks, totaling approximately $100,000 in cash, to CW1 in Philadelphia, PA, in exchange for service contracts and purchase orders with VAMC Philadelphia under which Company A and Company B received payment for goods provided to VAMC Philadelphia and received payment for services well in excess of the worth of those services provided. CW2 and CW3 explained that KAREN HOLLINS, while working for Company A, traveled to Philadelphia with CW2 and CW3, provided CW2 and CW3 with an initial introduction to CW1, with whom she had a previous relationship while she was a VA employee, and, at the direction of CW2 and CW3, HOLLINS herself paid CW1 one of the cash kickbacks. According to CW2 and CW3, in return for the cash kickbacks, CW1 directed what price they should quote for services and goods at VAMC Philadelphia and ensured that Company A and Company B were awarded service contracts and purchase orders for VAMC Philadelphia EMS.

12. In a meeting with CW1 in January 2021, CW1 told VA OIG Special Agents that KAREN HOLLINS introduced CW1 to CW2 and CW3 for the purpose of Company A and Company B obtaining business at VAMC Philadelphia. CW1 described subsequent conversations with HOLLINS after the initial meeting with CW2 and CW3 in which HOLLINS explained that CW2 and CW3 would pay kickbacks to CW1 in exchange for business (purchase orders and service contracts) with Company A and Company B.

13. A review of VA records confirmed that KAREN HOLLINS was a VA employee and last served as Assistant Chief of Logistics at VAMC Miami, beginning in that position on May 17, 2015 until she left government service with the VA on June 22, 2018. In her role as Assistant Chief of Logistics, HOLLINS was responsible for overseeing the procurement of goods for VAMC Miami.

14. I learned from CW2 and CW3 that they first met KAREN HOLLINS when she was the Assistant Chief of Logistics at VAMC Miami and and HOLLINS immediately went to work for Company A in July 2018 after she left VAMC Miami. CW2 and CW3 also explained that HOLLINS, in her former position as Assistant Chief of Logistics at VAMC Miami, had directed her subordinates to place purchase orders with Company A and Company B.[3]

---

[3] CW2 and CW3 also stated that they had provided KAREN HOLLINS with an Infinity G35 coupe, including insurance, to use for free and also employed her son at Company A, while HOLLINS served as Assistant Chief of Logistics at VAMC Miami and directed staff to place orders with Company A and Company B. Florida Highway Safety and Motor Vehicle records shows that a beige 2006 Infinity G35 coupe with Vehicle Identification Number JNKCV54E86M717828 was registered to CW2 in April 2011 and CW2 is still the registered owner of this vehicle.

5

15. I learned from VA records that, between May 2015 and June 2018, Company A and Company B were awarded more than $3.8 million in purchase orders with VAMC Miami.

16. On June 13, 2019, at the direction of VA OIG Special Agents, CW2 and CW3 met with CW1 at VAMC Philadelphia in response to CW1's solicitation of a kickback to continue giving business to Company A and Company B. VA OIG special agents provided CW2 and CW3 with $5,000 in cash, and, in a recorded meeting, CW2 and CW3 met with CW1, in CW1's office at VAMC Philadelphia, and paid CW1 a $5,000 cash kickback. After that payment was given to CW1, CW2 and CW3 discussed with CW1 an additional cash kickback payment to be made in July 2019.

17. On or about July 2, 2019, VA OIG special agents sent $3,000 in cash via UPS, allegedly from CW2 and CW3, to CW1's residence in Kinzers, PA. This action was prompted by a text message sent by CW1 to CW2, asking CW2 to tell CW3 not to "forget about the second of July." Subsequently, on or about July 9, 2019, CW1 confirmed receipt of the $3,000 in cash via a text message to CW2.

18. On or about August 14, 2019, at the direction of VA OIG special agents, CW2 and CW3 met with CW1 in a suite at the Hilton Bonnet Creek Hotel in Orlando, FL, during a Veterans Health Administration Environmental Programs Services training event and vendor fair. During that meeting which was recorded, CW1, CW2 and CW3 discussed an upcoming tree trimming contract at VAMC Philadelphia valued at $84,000. CW1 solicited a $10,000 kickback in exchange for awarding the contract to Company A and explained that CW2 and CW3 would get $74,000 from the contract for work worth approximately $4,000. During that meeting, CW1 told CW2 and CW3: "Hey, y'all. We, we partners."

19. I confirmed that there was a contract solicitation for tree trimming service at VAMC Philadelphia, contract solicitation number 36C24419Q0614. The contract scope of work included pruning and trimming 200 trees and bushes around VAMC Philadelphia property. CW1 was the contracting officer's representative for the contract and the contract was awarded to Company A on August 12, 2019, with an obligated amount of $84,000.

20. A review of invoices from Davey Tree and CW2's and CW3's American Express credit card records confirmed that CW2 and CW3 only paid $4,200 for work related to the $84,000 contract.

21. I have learned from VAMC Philadelphia purchasing records that from on or about July 18, 2018 to on or about December 11, 2019, Company A and Company B were awarded more than $2.2 million in purchase orders for Philadelphia VAMC EMS, and, between December 27, 2018 and September 24, 2019, CW2 and CW3, through Company A, were awarded five contracts, with a total award value of $1.1 million, related to VAMC Philadelphia EMS, which was overseen by CW1.[4]

## Current Investigation

22. In meetings with CW2 and CW3 in May and June 2019 and additional meetings in August 2020, CW2 and CW3 identified KAREN HOLLINS as an employee of Company A who travelled with them to Philadelphia to meet with CW1 at VAMC Philadelphia. According to CW2 and CW3, HOLLINS travelled to Philadelphia in August 2018 to obtain business on

---

[4] These contracts were set-aside contracts for Service-Disabled Veteran Owned Small Businesses ("SDVOSB"). CW2 and CW3 operated Company A as an SDVOSB, but Company A was not a legitimate SDVOSB and therefore was not entitled to bid on these contracts or to be awarded these contracts.

the behalf of Company A and Company B from CW1 at VAMC Philadelphia. CW2 and CW3 further explained that CW1 did not initially meet with HOLLINS, but met with her when, at the direction of CW2 and CW3, HOLLINS returned to CW1's office and gave CW1 approximately $2,000 in cash as a kickback. Upon receipt of that kickback, CW1 immediately instructed Philadelphia VAMC EMS staff to place purchase orders with Company A and Company B. CW2 and CW3 further explained that they reimbursed HOLLINS for that kickback paid to CW1.

23. I have reviewed KAREN HOLLINS' Wells Fargo Bank records, which confirm that she was in Philadelphia and at the Philadelphia VAMC multiple times in August 2018, including records that show that, on August 17, 2018, HOLLINS withdrew $1,300 from a Wells Fargo Bank ATM machine located at 2227 South Broad Street in Philadelphia, and, on August 23, 2018, HOLLINS withdrew $2,500 cash, via eWithdrawal, at a Wells Fargo Bank branch located at 6 North McDade Boulevard, Glenolden, PA. HOLLINs' bank records also showed the following transactions in Philadelphia in August 2018:

    a) A $212.49 Alamo Rent-A-Car charge in Philadelphia on August 1, 2018.

    b) An $800 ATM deposit at 1700 Market Street, Philadelphia on August 2, 2018.

    c) An $18 Gateway Parking charge in Philadelphia on August 2, 2018.

    d) A 201 H (Sheraton) hotel charge for $151.62 in Philadelphia on August 2, 2018.

    e) A $2.61 charge at Popeye's in Philadelphia on August 9, 2018.

    f) A $192.92 Alamo Rent-A-Car charge in Philadelphia on August 15, 2018.

    g) Two Veteran Canteen Service charges at VAMC Philadelphia on August 16, 2018, one was for $4.35 and the other was $7.07.[5]

    h) A $27.26 Renaissance Philadelphia Airport hotel charge on August 16, 2018.

    i) A Veteran Canteen Service charge at VAMC Philadelphia for $2.89 on August 17, 2018.

    j) Two Veteran Canteen Service charges at VAMC Philadelphia on August 22, 2018, one for $6.15 and another for $30.79.

    k) A $192.92 Alamo Rent-A-Car charge in Philadelphia on August 22, 2018.

    l) A 201 H (Sheraton) hotel charge for $300.89 in Philadelphia on August 24, 2018.

24. American Express credit card records for CW2 and CW3 shows that CW2's and CW3's credit cards were used in Philadelphia from on or about August 2, 2018 through August 24, 2018. During previous conversations with VA OIG Special Agents, CW2 and CW3 explained that they used their American Express credit cards to pay for lodging and travel for their employees' expenses, as well as for their own personal and business expenses. American Express transactions on the cards of CW2 and CW3 in August 2018 included:

    a) Air travel from Fort Lauderdale to Philadelphia for CW2 and CW3 on August 2, 2018;

    b) Air travel from Fort Lauderdale to Philadelphia for CW2 and CW3 on August 7, 2018 and returning from Philadelphia to Miami on August 8, 2018.;

---

[5] The Veteran Canteen Service is a small retail and convenience store located in all VA medical centers.

9

c) A Veteran Canteen Service charge for $8.20 at VAMC Philadelphia on August 2, 2018;

d) A Veteran Canteen Service charge for $3.80 at VAMC Philadelphia on August 3, 2018;

e) A $506.37 charge at Del Frisco's Steakhouse on Chestnut Street on August 2, 2018;

f) A $93.56 charge at Marathon Grill on 16th Street on August 2, 2018;

g) A $247.97 charge at Le Meridien Philadelphia on August 4, 2018;

h) A $73.58 charge at Gino's Steaks on August 3, 2018;

i) A $540.13 charge at the Marriott Courtyard on Junipter Street on August 8, 2018 and another $263.42 on August 9, 2018;

j) A $382.59 charge at Renaissance Philadelphia Airport hotel on August 13, 2018, with additional charges of $255.06 on August 18, 2018, and $264.66 on August 24, 2018.

25. CW2's and CW3's American Express credit card records show payments for flights to Philadelphia for KAREN HOLLINS three times in August 2018 including:

a) Atlanta to Philadelphia on August 1, 2018 and returning to Fort Lauderdale on August 3, 2018;

b) Philadelphia to Fort Lauderdale on August 9, 2018;

c) Philadelphia to Fort Lauderdale on August 17, 2018.

26. A review of VAMC Philadelphia purchase order records shows that, in July 2018, Company A received 6 purchase orders totaling $19,280.01, with the first order being placed on July

18, 2018, August 2018 records show that Company A and Company B received 51 purchase orders totaling $164,497, and September 2018 records show that Company A and Company B received 78 purchase orders totaling $118,65.40.

27. KAREN HOLLINS' Wells Fargo Bank records showed the following deposits from Company A and Company B made payable to HOLLINS during August and September 2018, totaling $33,558.35:

   a) Bank of America Company A check number 3423 for $10,090 dated August 20, 2018 was deposited on August 20, 2018;

   b) Bank of America Company B check number 1271 for $4,275.90 dated August 31, 2018 was deposited on September 1, 2018;

   c) Bank of America Company A check number 3432 for $3,974 dated August 31, 2018 was also deposited on September 1, 2018;

   d) Bank of America Company B check number 1277 for $3,500 dated September 7, 2018 was deposited on September 9, 2018;

   e) Company A direct deposit for $4,216.20 on September 14, 2018;

   f) Company A direct deposit for $7,502.25 on September 28, 2018.

## CONCLUSION

28. Based on the above facts, my training and experience and the training and experience of other agents with whom I work, I have probable cause to believe that KAREN HOLLINS did knowingly conspire with CW2 and CW3 to pay cash kickbacks to CW1 for official acts of awarding purchase orders and contracts to Company A and Company B, in violation of 18 U.S.C. § 371.

Respectfully submitted,

/s David Spilker
David Spilker
Special Agent in Charge
United States Department of Veterans Affairs
Office of Inspector General

Subscribed and sworn to before me
on September 24, 2021:  (remotely)

/s/ Elizabeth T. Hey
HONORABLE ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

12